BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
JOSHUA DAVID HURWIT, IDAHO STATE BAR NO. 9527
FRANCIS J. ZEBARI, IDAHO STATE BAR NO. 8950
ASSISTANTS UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV, SUITE 600
800 EAST PARK BOULEVARD
BOISE, IDAHO 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No.   1:19-cr-156-BLW |
|---|---|
| Plaintiff, | **INFORMATION** |
| vs. | 18 U.S.C. § 922(g)(1) |
| ZACHARY JOHNSTONE, a/k/a | 18 U.S.C. § 924(d) |
| ZACH JOHNSTONE, a/k/a | 18 U.S.C. § 1962(d) |
| ZACHARIA TYLER JOHNSTONE, | 28 U.S.C. § 2461(c) |
| Defendant. | ***Filed Under Seal*** |

The United States Attorney charges:

**INFORMATION - 1**

## COUNT ONE

### Conspiracy to Participate in a Racketeering Enterprise
### 18 U.S.C. § 1962(d)

### THE RACKETEERING ENTERPRISE

1. At all times relevant to this Information, the defendant, ZACHARY JOHNSTONE, a/k/a ZACH JOHNSTONE, a/k/a ZACHARIA TYLER JOHNSTONE, was, along with other individuals both known and unknown, a member of an organization named the Aryan Knights (the "AK").

2. The AK was formed in the mid-1990s in the Idaho Department of Correction ("IDOC") prison system. It is a prison gang that operates within IDOC prison facilities but also outside of IDOC facilities in the District of Idaho. It was founded to organize criminal activity for a select group of white inmates within IDOC custody. The AK has a white supremacist ideology.

3. Since its founding, the AK has continued to exist without pause. It is believed to have approximately 165 members within IDOC prison facilities and another 100 members who have been released from IDOC custody.

4. The AK has a leadership structure through which gang decisions are made, orders are given, and discipline on members is carried out. The AK uses associates and members who have been released from prison to traffic narcotics and other contraband into IDOC and to conduct gang business outside of IDOC facilities. The AK uses extortion, violence, and other methods to control the drug trade within IDOC, to generate revenue, and to retaliate against its enemies.

**INFORMATION - 2**

5. The AK recruits new members through, among other methods, offers of access to narcotics and money, threats, intimidation, and protection in prison. New members, known as "prospects," go through a probationary period during which they have to prove that they are worthy of becoming an AK member. A prospect typically must commit two crimes of violence to become a member, earning a "letter" ("A" and "K") for each act. The acts must be observed by other AK members. The AK's overall leadership approves the membership of each prospect. Particularly violent acts, acts that result in new criminal charges, and assaults against IDOC staff are particularly valued and can result in quick acceptance into the AK. Once approved, a new member is allowed to tattoo the letters "AK" on his body.

6. The AK has a code of conduct. The rules are typically communicated by senior members in order to avoid creating written documents that could be incriminating. The code includes:

   a. The AK is premised upon a white separatist and/or white supremacist ideology;

   b. The AK has a leadership structure that generally runs the activities of the AK and can impose discipline on members;

   c. Members are to carry out assaults or other crimes when ordered to by AK leaders;

   d. Members share profits from criminal activities with other members and AK leadership. This includes providing commissary goods to each other.

7. AK members associate with each other within IDOC prison facilities. Members who live together in a housing unit communicate with each other to establish general knowledge of the AK's rules, structure, activities, and objectives. Members also communicate with each

**INFORMATION - 3**

other through messages or third parties, including associates living outside of IDOC prison facilities. Topics of discussion include resolving disputes within the AK and with other rival prison gangs, generating revenue, collecting debts, and punishment and assaults necessary to further the goals of the AK.

    8.    At all times relevant to this Information, the AK, including its leaders, members and associates, constituted an "enterprise" as defined by 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise.

    9.    The purposes of the enterprise included the following:

    a.    Preserving and protecting the power and profits of the enterprise, as well as promoting respect among rivals of the enterprise, through the use of intimidation, violence, including assaults and acts involving murder, and threats of violence;

    b.    Promoting and enhancing the enterprise and its members' and associates' activities;

    c.    Keeping victims and potential victims in fear of the enterprise and in fear of its members and associates through violence and threats of violence;

    d.    Providing financial support and information to gang members; and

    e.    Providing assistance to other gang members who committed crimes for, and on behalf of, the gang.

**INFORMATION - 4**

## Manner and Means

10. Leaders, members, and associates of the AK use any means necessary as a source of revenue. At times AK members, prospects or other inmates provide money through inmate trust or commissary to secure physical safety.

11. Leaders, members, and associates of the AK used drug trafficking as another primary source of revenue. AK leaders, members, and associates engaged in smuggling drugs and other contraband not manufactured in Idaho into IDOC facilities through visitation and other means. Through extortion, threats, or otherwise, the AK leaders, members, and associates also enlisted non-members to bring drugs into IDOC facilities where AK leadership distributed the narcotics and kept the revenue for gang purposes.

12. AK leadership had various ways to collect, launder, and distribute funds it derived from criminal activity. By way of example, AK member D.B. had his wife deposit funds on the defendant's inmate trust account at or around a holiday so defendant could purchase music. This deposit was made after defendant knew that D.B. was collecting money or other items of value from smuggling drugs into IDOC.

13. Leaders, members, and associates of the AK would communicate regarding (1) trafficking drugs into and within IDOC prison facilities, (2) extorting other inmates, (3) distributing revenue of the AK to members, and (4) disciplining AK members who had violated the AK's code of conduct, among other things.

14. Leaders, members, and associates of the AK agreed that acts of violence, including assault, would be committed by members of the AK against other inmates, rival gang members, as part of discipline for AK members, and on other occasions as deemed necessary to promote a climate of fear in order to enforce the authority of the AK.

**INFORMATION - 5**

## THE RACKETEERING CONSPIRACY

15.     Beginning on or about at least 2004, and continuing through the present, in the District of Idaho and elsewhere, the defendant, ZACHARY JOHNSTONE a/k/a ZACH JOHNSTONE, a/k/a ZACHARIA TYLER JOHNSTONE, being a person employed by and associated with the AK, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown, did knowingly and intentionally conspire to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the AK enterprise through a pattern of racketeering activity as defined in 18 U.S.C. § 1961(1) and (5), which pattern of racketeering activity consisted of:  multiple offenses involving the extension and collection of credit by extortionate means, in violation of 18 U.S.C. § 894; multiple acts involving extortion, in violation of Idaho Code § 18-2403; multiple acts involving illegal gambling, in violation of 18 U.S.C. § 1955; multiple acts involving the laundering of monetary instruments, in violation of 18 U.S.C. § 1956; and multiple acts involving dealing in a controlled substance, in violation of  21 U.S.C. §§ 841(a) and 846 and in violation of Idaho Code §§ 37-2732(a), (f), and 18-306.

16.     It was part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

### Overt Acts

17.     In furtherance of the conspiracy and to achieve the objectives thereof, the conspirators performed, or caused to be performed, the following overt acts, among others, in the District of Idaho:

   a.     In 2007, the defendant falsely accused N.K., another AK member and a rival in the AK's leadership structure, of being a law enforcement informant and ordered

**INFORMATION - 6**

a "green light" on N.K.—that is, an order to assault N.K. After N.K. was released from prison, an AK member R.S. assaulted N.K. N.K. later returned to prison and AK member S.D. threatened N.K., forcing him into protective custody.

   b.   In 2008, the defendant ordered two AK members to assault D.H., who had been unwilling to join the AK. The assault took place. When IDOC correctional officers attempted to remove the defendant from his cell based on his role in the assault and move him to another cell/location, the defendant assaulted one of the correctional officers.

   c.   In 2008, J.P. attempted to smuggle narcotics into the IDOC for the AK to avoid an assault for being a suspected law enforcement informant. J.P. attempted to have the narcotics smuggled into IDOC but failed. When the defendant learned of this information through the passage of a letter, he passed the information on to two AK prospects. The two AK prospects assaulted J.P. and were admitted into the AK.

   d.   In 2010, the defendant did not allow L.J. to become a member of the AK. He was then assaulted by AK members. L.J. went into administrative segregation to avoid assault by the AK and made payments to AK members to avoid further assault.

   e.   From 2011 through 2015, AK member D.B. and other AK members smuggled drugs into IDOC. The defendant oversaw and directed the distribution of some of these drugs. D.B. also arranged to have drug proceeds sent to support AK members in prison, including the defendant, concealing the source of the funds.

   f.   In 2016 defendant became aware that D.B. was continuing to smuggle methamphetamine into IDOC and that D.B. was using methamphetamine. The defendant expressed his disapproval to D.B. As a result of the defendant's disapproval, D.B. began to make promises that he would make things right by paying AK members. D.B.

**INFORMATION - 7**

promised to pay AK members by having money put on their inmate trust accounts. The defendant told D.B. (through other inmates) to remove his AK tattoo. D.B. was assaulted because he did not pay AK members as he promised and never removed his AK tattoo. All in violation of Title 18, United States Code, Section 1962(d).

### Special Sentencing Factor

18.    From on or about 2004 and continuing to on or about 2015, in the District of Idaho and elsewhere, the defendant did conspire to deliver, possess with intent to deliver, and actually deliver, methamphetamine, a controlled substance classified in Schedule II, in violation of Idaho Code Sections 37-2732(a)(1)(A), 37-2732(f), and 37-2707(d)(3).

### COUNT TWO

### Unlawful Possession of Firearm
### 18 U.S.C. § 922(g)(1)

On or about January 10, 2018, in the District of Idaho, the defendant, ZACHARY JOHNSTONE, a/k/a ZACH JOHNSTONE, a/k/a ZACHARIA TYLER JOHNSTONE, having been convicted of a crime punishable by imprisonment for a term exceeding one year, that is: Aggravated Assault, entered on or about August 11, 2003, in case number CR97-03188C, in the Third Judicial District of the State of Idaho, in and for Canyon County, did knowingly possess in and affecting commerce a firearm, to wit: a Magnum Research, Model Baby Eagle, 9mm caliber pistol, serial number 36314813, said firearm having been shipped and transported in interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(g)(1).

**INFORMATION - 8**

## **CRIMINAL FORFEITURE ALLEGATION**

### RICO Forfeiture
### 18 U.S.C. § 1963

The allegations contained in Count One of this Information are hereby incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as party of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count One of this Information.

The defendant, ZACHARY JOHNSTONE, a/k/a ZACH JOHNSTONE, a/k/a ZACHARIA TYLER JOHNSTONE:

1. has acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

2. has an interest in, security of, claims against, and property and contractual rights which afford a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963 (a)(2);

3. has property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

**INFORMATION - 9**

The interest of the defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to:

1. <u>Unrecovered Cash Proceeds and/or Facilitating Property</u>.  The defendant obtained and controlled unrecovered proceeds of the offense of conviction, or property derived from or traceable to such proceeds, and property the defendant used to facilitate the offense, but based upon actions of the defendant, the property was transferred, diminished, comingled, or is otherwise unavailable.

1. <u>Substitute Assets.</u>  Pursuant to 18 U.S.C. § 1963 and other applicable statutes, the government will seek forfeiture of substitute assets, "or any other property of the defendant" up to the value of the defendant's assets subject to forfeiture.  The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred or sold to, or deposited with, a third person;

   c. Has been placed beyond the jurisdiction of the court;

   d. Has been substantially diminished in value; or

   e. Has been commingled with other property which cannot be subdivided without difficulty.

All pursuant to Title 18, United States Code, Section 1963.

**Firearm Forfeiture**
**18 U.S.C. § 924(d); 28 U.S.C. § 2461(c)**

As a result of the violations of Title 18, United States Code, Section 922(g)(1), as alleged in Count One of this Information, the defendant, ZACHARY JOHNSTONE, a/k/a ZACH JOHNSTONE, a/k/a ZACHARIA TYLER JOHNSTONE, shall forfeit to the United States any

**INFORMATION - 10**

firearms or ammunition involved in or used in the commission of the offense, including but not limited to, the following:

<u>Seized Personal Property</u>. All firearms and ammunition involved in the commission of the offense, including but not limited to a Magnum Research, Model Baby Eagle, 9mm caliber pistol and magazine, serial number 36314813, and 51 rounds of 9mm ammunition box and ammunition box.

<u>Substitute Assets</u>:  If any of the property described above, as a result of any act or omission of the defendant:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the court;

d. Has been substantially diminished in value; or

e. Has been comingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

Dated this \_\_1st\_\_ day of ~~April~~ MAY, 2019.

BART M. DAVIS
United States Attorney
By:

/s/ Joshua D. Hurwit
Joshua D. Hurwit
Francis J. Zebari
Assistants United States Attorney

**INFORMATION - 11**